UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

INDIAN HARVEST SPECIALTIFOODS, INC.,

       Plaintiff,      NO. CIV. 04-CV-1055-FCD KJM

    v.

WESTCHESTER FIRE INSURANCE COMPANY,    MEMORANDUM AND ORDER

       Defendant.

_____/

----oo0oo----

Plaintiff, Indian Harvest Specialtifoods, Inc., ("plaintiff"), has filed suit against defendant Westchester Fire Insurance Co. ("defendant"), based on defendant's denial of plaintiff's insurance claim to recover for damage to equipment caused by glass found in rice being processed at plaintiff's plant.[1] Through the instant motion, plaintiff seeks to preclude defendant's expert witness, Dr. Thomas L. Read, Ph.D., P.E.,

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h)

1

("Dr. Read"), from testifying based on the court's Status (Pre-trial Scheduling) Order ("Scheduling Order"), and Fed. R. Civ. Proc. 37(c)(1).[2]  For the reasons stated herein, the court DENIES plaintiff's motion to preclude since the designation of Dr. Read, while untimely and worthy of sanction, was harmless and thus does not warrant exclusion.

**BACKGROUND**

In September 2002, plaintiff, a rice processor and packager, discovered large quantities of glass in wild rice it was processing. (Comp'l at 2:6-8.)  Plaintiff filed a claim with defendant, their insurer, to recover the increased costs incurred from the extra cleaning, storage and lost product. (Id. at 2:10-16.)  Defendant's third party adjuster hired Dr. Read in late 2002 to assist with the investigation of plaintiff's claim, specifically to evaluate the type and potential source of the glass particles. (Resp. To Opp'n at 3:1.)  Plaintiff provided Dr. Read with six samples of the glass found in the processing plant for analysis. (Read Dec. at 2:6.)  Dr. Read prepared an initial report, based on the samples provided, that was not conclusive as to the origin of the glass. (Read Dec., Ex. A.)  Plaintiff was provided a copy of that report. (Kearney Dec. at 2: 2-3.)

On August 24, 2004, the court issued a Scheduling Order, which set forth that all parties needed to disclose experts by January 7, 2005, and complete discovery by March 14, 2005.

---

[2] Unless otherwise stated, further references to a "Rule" are to the Federal Rules of Civil Procedure.

1  (Scheduling Order at 2:13.)  The court issued an amended
2  Scheduling Order on February 23, 2005, which extended the close
3  of discovery to March 28, 2005.  (Stipulation and Order Extending
4  Disc. Cut-off at 1:3.)

5  Parties engaged in extensive communications beginning in
6  October 2004, in an effort to schedule inspections by Dr. Read of
7  plaintiff's plant and of the glass samples in plaintiff's
8  possession.  On November 5, 2004, defendant filed its Second
9  Demand for Production which requested that plaintiff provide
10  responses to, among other things, the requested inspections of
11  the plant and glass.  (Coplen Dec., Ex. N.)  The demand noted
12  that the parties had scheduled the inspection of plaintiff's
13  plant for December 14, 2004.  (Id.)  Plaintiff's counsel
14  requested the date be moved to December 17, 2004.  (Coplen Dec.,
15  Ex. Q.)  Plaintiff then cancelled and offered thirteen alternate
16  dates, all of which fell after the deadline to designate expert
17  witnesses.  (Res. to Opp'n at 4:26-5:1, citing Coplen Dec., Ex.
18  T.)  The inspections of the plant and glass occurred in late
19  February and March 2005.  Following the inspections and analysis,
20  Dr. Read prepared his final report.  (Read Dec., Ex. B.)

21  Defendant filed its supplemental expert witness disclosure
22  for Dr. Read on April 26, 2005.  (Supplemental Expert Disclosure
23  ("SED") at 3:4.)  Plaintiff subsequently filed the instant motion
24  to preclude Dr. Read's testimony based on this court's Scheduling
25  Order and Rule 37(c)(1).

## ANALYSIS

**1.   Requirements of the Court's Scheduling Order**

28  The Scheduling Order, dated August 24, 2004, set January 7,

3

2005 as the deadline to designate expert witnesses. There is no question that defendant's designation of Dr. Read on April 26, 2005 violated this provision of the Scheduling Order.³

The Court's Scheduling Order provides in relevant part:

> Failure of a party to comply with the disclosure schedule as set forth above in all likelihood will preclude that party from calling the expert witness at the time of trial. An expert witness not appearing on the designation will not be permitted to testify unless the party offering the witness demonstrates: (a) that the necessity for the witness could not have been reasonably anticipated at the time the list was proffered; (b) that the court and opposing counsel were promptly notified upon discovery of the witness; and (c) that the witness was promptly made available for deposition.

Scheduling Order at 2:21-27. The Ninth Circuit noted, when reviewing a district court order excluding a late-designated witness for failure to comply with a scheduling order containing identical compliance language, "[deadlines] must not be enforced mindlessly ... Sometimes there may be good reason to permit an identification of additional witnesses after the established deadline. The pretrial order at issue here took that into account and itself established the standard for seeking relief from the order." Wong v. Regents, 379 F.3d 1097, 1103, amended on other grounds, 2005 U.S. App. LEXIS 10433 (9th Cir. June 7, 2005)(finding the court did not abuse its wide discretion in determining that the pretrial order requirements were not met).

---

   ³ It should have been clear to defendant by early 2005 that it would not satisfy the deadline to designate Dr. Read. As such, the prudent thing for defendant to do would have been to ask the court either to compel plaintiff to schedule the inspections of the plant and glass production or to request an extension of the expert designation deadline. Defendant did neither. Defendant now must rely on the court's discretion to permit a late designation.

4

Thus, Dr. Read's testimony should be excluded unless defendant demonstrates that Dr. Read's necessity could not have been reasonably anticipated, that defendant promptly notified the court and opposing counsel upon discovery of Dr. Read's necessity as a witness, and that Dr. Read was promptly made available for deposition.

Defendant's first hurdle is the highest. In light of the fact that defendant retained Dr. Read as far back as December 2002, it is difficult to understand why defendant did not anticipate the need for his testimony. However, the Scheduling Order does not require defendant to show it was unaware of the *existence of a witness*. Rather, it must demonstrate that it could not reasonably anticipate the *need to call him as a witness*. Here, Dr. Read could not form a full and informed opinion regarding the origin of the glass prior to the inspections of the plant and glass, which were delayed until late February and March 2005. Dr. Read's initial report, which was made available to plaintiff, found only that five of the six shards he analyzed were "soda lime" glass. (Read Dec., Ex. A.) It was not until after the plant and glass inspections that Dr. Read was able to opine on the likely origin of the glass, that of a bottle of alcohol. (SED; Read Dec., Ex. B.) Until the report was prepared, defendant could not have known if Dr. Read's testimony would be of any value at all. Thus, prior to Dr. Read's formation of a full opinion regarding the origin of the glass, defendant could not reasonably anticipate the need for Dr. Read's testimony.

Moreover, a party can designate an expert only when that

expert is fully prepared to render an informed opinion.  The court's Scheduling Order states, in relevant part:

> All experts designated are to be fully prepared at the time of **designation** to render an informed opinion, and give their bases for their opinion, so that they will be able to give full and complete testimony at any deposition taken by the opposing party.  Experts will not be permitted to testify at the trial as to any information gathered or evaluated, or opinion formed, after deposition taken subsequent to designation.

Scheduling Order at 3:10-14 (emphasis in original).

Until Dr. Read inspected the plant, analyzed the glass, and prepared his report, he was not prepared to "render an informed opinion ... so that [he] will be able to give full and complete testimony at any deposition."  (Scheduling Order at 3:10-17.)  The inspections did not occur until well after the expert designation deadline had passed.[4]  Thus, Dr. Read could not prepare his report or render an informed opinion prior to the expert designation deadline.  To designate him under such circumstances would have violated the court's Scheduling Order.[5]  Consequently, the court finds that, prior to Dr. Read's inspection of the plant and glass and preparation of his report, defendant could not anticipate that Dr. Read was a necessary expert witness.  (SED at 1:22.)

Defendant also satisfies the remaining two requirements for late designation, that defendant promptly notified the court and

---

[4] The plant inspection finally occurred at the end of February 2005.  The glass inspection occurred on March 16, 2005.

[5] The court notes some tension between the provisions of the court's Scheduling Order, since presumably a party might "reasonably anticipate the necessity of a witness" prior to the witness being fully prepared to offer an informed opinion.

opposing counsel and that Dr. Read was promptly made available for deposition.  On April 26, 2005, after receiving Dr. Read's expert witness report, defendant designated him to the court and to opposing counsel as an expert witness and complied with all requirements for documentation related to an expert witness.  (SED at 1:22.)  Additionally, defendant immediately renewed its previous offer to make Dr. Read available to opposing counsel for deposition.[6]  (SED at 2:19-20.)

Accordingly, the court finds that, although defendant should have requested an extension of the deadline to designate expert witnesses, the court's Scheduling Order does not preclude defendant from using Dr. Read as an expert witness.  That said however, the court finds defendant's failure worthy of sanction.  Accordingly, defendant will pay plaintiff the cost for a one-day deposition of Dr. Read, at his specified rate of $285.00.

### 3. Failure to Disclose under Rule 37(c)(1)

Plaintiff secondarily contends that defendant's late designation of Dr. Read violated Rule 37(c)(1) and thus Dr. Read's testimony should be excluded.  Rule 37(c)(1) in relevant portion states that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, **unless such failure is harmless**, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to

---

[6] Defendant had offered Dr. Read for deposition by plaintiff as early as November 4, 2004. (Comm. btwn Coplen & Bland, Nov. 4, 2004 1:49 p.m.)  Plaintiff did not take advantage of this offer, nor has plaintiff deposed Dr. Read in the nearly two months since Dr. Read's designation on April 26, 2005. (Res. to Opp'n at 8:23-24.)

7

>     or in lieu of this sanction, the court, on motion and after
>     affording an opportunity to be heard, may impose other
>     appropriate sanctions.

Rule 37 (c)(1) (emphasis added). Subsection (c)(1) was added to Rule 37 in 1993. The Advisory Committee notes for the amendment describe it as a "self-executing," "automatic" sanction to "provide[]a strong inducement for disclosure of material." Rule 37 advisory committee's notes (1993).

The Rule includes two exceptions to the "automatic" sanction of exclusion. The witness may be permitted to testify if either there is a substantial justification for failure to disclose or if such failure is harmless. Rule 37(c)(1). The burden is on the party facing sanctions to prove the failure was harmless. Yeti by Molly, Ltd., 259 F.3d 1101, 1107 (9th Cir. 2001). The determination of whether to include or exclude discovery, such as an expert, is within the wide discretion of this court. Yeti, 259 F.3d at 1106; Jenkins v. Whittaker, 785 F.2d 720, 728 (9th Cir. 1986), cert. denied, 479 U.S. 918 (1986); Campbell Indus. v. M/V Gemini, 619 F.2d 24, 27 (9th Cir. 1980).

In deciding whether the failure to disclose an expert witness was harmless, the court looks to four factors:

>     (1) the prejudice or surprise in fact of the party against
>     whom the excluded witnesses would have testified;(2) the
>     ability of that party to cure the prejudice; (3) the extent
>     to which waiver of the rule against calling unlisted
>     witnesses would disrupt the orderly and efficient trial of
>     the case or other cases in the court; (4) bad faith of
>     willfulness in failing to comply with the court's order.

Kim v. Pacific Bell, 1999 U.S. Dist. Lexis 15289, *7 (N.D. Cal. Sept. 20, 1999) (citing Woodworker's Supply, Inc. v. Principal Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999). Cf. Price v. Seydel, 961 F.2d 1470, 1474 (9th Cir. 1992) (adopting Seventh

1 Circuit's aforementioned factors for witnesses not included on
2 the pretrial list, from Spray-Rite Serv. Corp. v. Monsanto Co.,
3 684 F.2d 1226, 1245 (7th Cir. 1982)), aff'd on other grounds, 465
4 U.S. 752 (1984)).

As to the first factor, the court concludes that plaintiff suffered no surprise by the late designation of Dr. Read.  Unlike a witness whose identity is undisclosed until after designation, Dr. Read was well known to plaintiff for months prior to his designation.  Plaintiff initiated requests for Dr. Read's files as early as September 2004, and received a copy of Dr. Read's initial report in late December 2002.  (Bland Dec., Ex. A.; Kearney Dec. at 2:4.)  Thus, Dr. Read's late designation caused no surprise.

However, plaintiff claims that the late designation of Dr. Read is prejudicial, since plaintiff neither deposed nor conducted discovery necessary to refute his opinions.  (Mot. to Preclude at 9:8.)  Plaintiff contends that inclusion of Dr. Read's testimony would require significant additional preparation before the pending motion for summary judgement, currently scheduled for hearing on July 22, 2005, and the upcoming November trial.  (Id. at 2:11-13.)  While the court agrees that plaintiff would suffer some prejudice if Dr. Read were permitted to testify, any such prejudice is mitigated by the fact that plaintiff has been aware of Dr. Read for months and defendant repeatedly offered to allow plaintiff to depose Dr. Read beginning in November 2004.  As such this factor does not weigh strongly against a finding of harmlessness.

Moreover, the existence of prejudice, while significant,

does not automatically require exclusion of the witness where the prejudice can be cured.  The court concludes that a cure here is relatively easy.  If plaintiff so requests, the court can afford additional time to depose Dr. Read and conduct discovery to refute Dr. Read's testimony.  If necessary, the pending motions for summary judgement could be rescheduled.  Any minor modification of the discovery and dispositive motion deadlines should not affect the trial date, which is five months away. Thus, the second factor weighs in favor of a finding of harmlessness.

Next, the court examines the extent the addition of this witness will disrupt the order and efficiency of this and other court proceedings.  As noted above, while inclusion of Dr. Read's testimony may necessitate extension of some deadlines in the Scheduling Order, such extensions will not affect the trial date and thus have only a minor effect on the court's calendar and proceedings.  As such this factor does not weigh strongly against a finding of harmlessness.

Finally, it does not appear that defendant's failure to timely designate Dr. Read was willful or in bad faith.  The court can ascertain no attempt to gain a tactical advantage or to surprise plaintiff, especially given Dr. Read was known and discussed by the parties since prior to commencement of this action.  Accordingly, this factor weighs in favor of a finding of harmlessness.

In light of the factors discussed above, the court finds that the failure to disclose Dr. Read by January 7, 2005, as provided under Rule 37(c)(1), was harmless.

**CONCLUSION**

For the foregoing reasons the court DENIES plaintiff's motion to preclude Dr. Read's testimony.[7] However, the court SANCTIONS defendant for failure to fully comply with the Scheduling Order. Defendant shall pay plaintiff the cost of plaintiff's deposition of Dr. Read, not to exceed seven hours at his specified rate of $285.00.

IT IS SO ORDERED.

DATED: June 29, 2005

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

---

[7] If plaintiff so requests, the court will grant a reasonable extension of discovery, including submission of rebuttal witnesses, and a postponement of the pending motions for summary judgement before the court.

11