UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

INDIAN HARVEST SPECIALTIFOODS, INC.,

          Plaintiff,

                              NO. CIV. S-04-1055 FCD/KJM

     v.
                              MEMORANDUM AND ORDER

WESTCHESTER FIRE INSURANCE COMPANY,

          Defendant.

----oo0oo----

     Plaintiff, Indian Harvest Specialtifoods, Inc., ("plaintiff"), filed suit against defendant Westchester Fire Insurance Co. ("defendant"), based on defendant's denial of plaintiff's insurance claim to recover for damage to equipment caused by glass found in rice being processed by plaintiff.[1] Plaintiff filed a motion for partial summary judgment of

_____

[1]     Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1  defendant's seventh affirmative defense contending that the

2  policy's contamination endorsement violates the efficient

3  proximate cause doctrine under California law.  Defendant cross-

4  moved for summary judgment asking the court to find that

5  plaintiff's loss was excluded from coverage.  For the reasons

6  stated herein, the court denies both plaintiff's motion for

7  partial summary judgment and defendant's motion for summary

8  judgement, finding that material issues of fact remain as to

9  whether the loss is excluded under this all-risk policy.

10                              **BACKGROUND**

11       Defendant issued plaintiff a Commercial Property Insurance

12  Policy, No. FPA 359784 ("the Policy"), which was effective from

13  February 19, 2002 through February 19, 2003. (Pl's Resp. to

14  Def.'s Separate Stmt. of Undisputed Facts, ("RUF") at ¶ 5.)

15  Plaintiff asserts that the Policy is an all-risk policy, while

16  defendant contends it is a specifically-enumerated risk policy.

17       In September 2002, plaintiff, a rice processor and packager,

18  discovered large quantities of glass in wild rice it was

19  processing and in its processing machinery.  (Id. at ¶ 1.)

20       On September 12, 2002, plaintiff filed a claim with

21  defendant, their insurer, to recover costs incurred from the

22  extra cleaning, storage and loss of product.  (RUF at ¶ 6.)

23  Defendant's claim adjustor assessed the claim.  (Id. at ¶ 4.)

24  Neither party has provided direct evidence of how the glass

25  entered the wild rice.  (Id. at ¶¶ 3-4.)

26       In late January 2003, defendant denied the claim after

27

28

                                    2

1   finding that plaintiff's loss was not covered under the policy.[2]

2   (Def.'s Opposing Separate Stmt of Disputed and Undisputed Facts

3   in Opp'n to Pl.'s Partial MSJ ("DF"), at ¶ 4; RUF at ¶¶ 9-11).

4        Plaintiff then notified defendant that it believed the glass

5   entered the rice through an act of vandalism by unknown persons.

6   (DF at ¶ 5.)  Again, on September 23, 2003 defendant denied the

7   claim noting that the "denial of this claim as set forth in the

8   January 24, 2003 letter is appropriate." (RUF at ¶ 16.)[3]

9        The parties disagree about the cause of the loss.  Plaintiff

10  claims that the cause of the loss was an act of vandalism. (DF at

11  ¶ 5.)  Defendant asserts that any claim plaintiffs made for its

12  loss was denied because plaintiff has not met its burden to show

13  that the loss is covered under the Policy. (DF at ¶ 6.)[4]

14       On June 15, 2005 plaintiff filed a motion for partial

15  summary judgment of defendant's seventh affirmative defense that

16  Endorsement ACE "D" (the "Contamination Endorsement") bars

17  coverage of its loss.  Plaintiff alleges that as a matter of law,

18  the Contamination Endorsement violates California law and thus

19

20       [2]  Plaintiff's hearsay objection to defendant's January
21  23, 2003 letter is overruled.  The court cites the letter, not
    for the truth of the matter asserted therein, but to show that
22  the claim was denied.

23       [3]  Plaintiff's hearsay objection to defendant's January
    23, 2003 letter is overruled.  The court cites the letter, not
24  for the truth of the matter asserted therein, but to show that
    the claim was denied.  Both plaintiff and defendant make further
25  evidentiary objections to statements and exhibits submitted by
    the other party.  However, it is unnecessary to rule upon these
26  objections to dispose of the motions at hand except as otherwise
    noted by the court.

27       [4]  Further stating that "even of [sic] a covered loss were
    established, its contamination exclusion bars coverage". (DF at
28  ¶ 6.)

                                    3

1  defendant is prohibited from using it to exclude plaintiff's loss

2  from coverage.

3      Thereafter on June 21, 2005, defendant filed a cross motion

4  for summary judgement asserting that, as a matter of law, no

5  material question of fact existed as to whether plaintiff's claim

6  was covered since plaintiff failed to demonstrate that the loss

7  was covered under the Policy.

8                          **STANDARD**

9      Summary judgment is appropriate when it is demonstrated that

10  there exists no genuine issue as to any material fact, and that

11  the moving party is entitled to judgment as a matter of law.

12  Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

13  157 (1970).

14      When parties submit cross-motions for summary judgment, the

15  court must review the evidence submitted in support of *each*

16  cross-motion and consider each party's motion on its own merits.

17  <u>Fair Housing Council of Riverside County, Inc. v. Riverside Two</u>,

18  249 F.3d 1132, 1136 (9th Cir. 2001).  The court must examine each

19  set of evidence in the light most favorable to the non-moving

20  party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

21      The moving party "always bears the initial responsibility of

22  informing the district court of the basis for its motion, and

23  identifying those portions of 'the pleadings, depositions,

24  answers to interrogatories, and admissions on file, together with

25  the affidavits, if any,' which it believes demonstrate the

26  absence of a genuine issue of material fact." <u>Celotex Corp. v.</u>

27  <u>Catrett</u>, 477 U.S. 317, 323 (1986).  If the moving party meets its

28  initial responsibility, the burden then shifts to the opposing

                                4

1  party to establish that a genuine issue as to any material fact

2  actually does exist.  <u>Matsushita Elec. Indust. Co., Ltd. v.</u>

3  <u>Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986); <u>First Nat'l Bank</u>

4  <u>of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-289 (1968).

5  Genuine factual issues must exist that "can be resolved only by a

6  finder of fact, because they may reasonably be resolved in favor

7  of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

8  256 (1986).

9      In judging evidence at the summary judgment stage, the court

10 does not make credibility determinations or weigh conflicting

11 evidence.  <u>See</u> <u>T.W. Elec. Serv., Inc. v. Pacific Elec.</u>

12 <u>Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing

13 <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S.

14 574, 587 (1986)).  The evidence presented by the parties must be

15 admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative

16 testimony in affidavits and moving papers is insufficient to

17 raise genuine issues of fact and defeat summary judgment.  <u>See</u>

18 <u>Falls Riverway Realty, Inc. v. City of Niagara Falls</u>, 754 F.2d

19 49, 57 (2d Cir. 1985); <u>Thornhill Publ'g Co., Inc. v. GTE Corp.</u>,

20 594 F.2d 730, 738 (9th Cir. 1979).

21                          **ANALYSIS**

22      **1.   The Insurance Contract at Issue is an All-Risk Policy**

23      Defendant argues that the insurance policy it issued

24 plaintiff ("the Policy"), is a specifically-enumerated risk

25 policy, under which plaintiff bears the burden of demonstrating

26 that its loss is specifically within the policy coverage.

27 According to defendant, plaintiff cannot satisfy this burden and

28 therefore summary judgment should be granted in its favor.

                              5

1    Plaintiff, however, contends that the Policy is an all-risk
2    policy.  Unlike a specifically-enumerated risk policy, an all-
3    risk policy creates a special type of coverage allowing for all
4    fortuitous losses not resulting from misconduct or fraud, unless
5    the Policy contains a specific provision expressly excluding the
6    loss from coverage.  C. H. Leavell & Co. v. Fireman's Fund Ins.
7    Co., 372 F.2d 784, 787 (9th Cir. 1967); Assoc. Engineers, Inc. v.
8    American Nat'l Fire Ins. Co., 175 F. Supp. 352 (N.D. Cal. 1959).

9    If plaintiff's contention is correct, that the Policy is
10   all-risk, then all plaintiff must prove is that it suffered a
11   fortuitous and extraneous loss on covered property.  Id.  The
12   burden then shifts to defendant to prove that plaintiff's loss is
13   specifically excluded or limited under the Policy.  Aydin Corp.
14   v. First State Ins. Co., 18 Cal. 4th 1183, 1188 (Cal., 1998);
15   Weil v. Federal Kemper Life Assurance Co., 7 Cal. 4th 125, 148
16   (1994); Garvey v. State Farm Fire & Cas. Co., 48 Cal. 3d 395, 406
17   (1989); Royal Globe Ins. Co. v. Whitaker, 181 Cal. App. 3d 532,
18   537 (1986).

19   Interpretation of an insurance policy, like other questions
20   of contract interpretation, is a question of law.  Waller v.
21   Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995).  While
22   insurance contracts have special features, their interpretation
23   still follows the ordinary rules of contract interpretation.  If
24   the contracts language is clear, that meaning governs.  Cal. Civ.
25   Code § 1638; Bank of the West v. Superior Court,  2 Cal. 4th
26   1254, 1264 (1992).  The 'clear and explicit' meaning of a
27   contract's provisions, interpreted in their 'ordinary and popular
28   sense,' controls judicial interpretation unless they are used by

6

1   the parties in a technical sense or if a special meaning is given

2   to them by usage.  <u>AIU Ins. Co. v. Superior Court</u>, 51 Cal.3d 807,

3   822 (1990).  Thus, if the meaning a layperson would ascribe to

4   contract language is not ambiguous, the court applies that

5   meaning.  <u>Id.</u>  The intent of the parties, if possible, must be

6   inferred solely from the written provisions of the contract.  <u>Id</u>.

7       The contract's language must be interpreted as a whole, and

8   in the circumstances of the case, and cannot be found to be

9   ambiguous in the abstract.  <u>Waller</u>, 11 Cal. 4th at 18-19.  Courts

10  will not strain to create an ambiguity where none exists.  <u>Id.</u>

11  The fact that a term is not defined in the policies does not make

12  it ambiguous.  <u>Foster-Gardner, Inc. v. Nat. Union Fire Ins. Co.</u>,

13  18 Cal. 4th 857, 868 (1998).

14      If an asserted ambiguity is not eliminated by the language

15  and context of the policy, courts then invoke the principle that

16  ambiguities are generally construed against the party who caused

17  the uncertainty to exist (i.e., the insurer) in order to protect

18  the insured's reasonable expectation of coverage.  <u>La Jolla Beach</u>

19  <u>& Tennis Club, Inc. v. Indus. Indem. Co.</u>, 9 Cal. 4th 27, 37

20  (1994).

21  The Policy language at issue is as follows:

22      The Coverage section of the Building and Personal Property

23  Coverage Form states:

24          We will pay for direct physical loss of or damage to
            Covered Property[5] at the premises described in the
25

26

27          [5]   Plaintiff alleges the loss occurred on Covered
        Property.  For the purposes of this motion, and only this motion,
28      defendant does not dispute that allegation. (Def.'s MSJ at 7:8-

                                    7

1
2
          Declarations caused by or resulting from any Covered
          Cause of Loss.

3  (Kearney Dec., Ex. H at 148.)  Within the Policy's various

4  Coverage Forms, references to Covered Causes of Loss direct the

5  reader to the Declarations page for a definition of the term.

6  (Id. at 149.) ("See applicable Causes of Loss Form as shown in

7  Declarations").

8       The Commercial Property Declarations Form ("Declaration

9  form") states that the term Covered Cause of Loss is determined

10 by Special Form - CP1030 (10-00) ("Causes of Loss Form").  (Id.

11 at 139.)

12      The Causes of Loss Form states:

13      A. Covered Causes of Loss.  When special is shown in the
        Declarations, Covered Causes of Loss means Risks Of Direct
14      Physical Loss unless the loss is: 1. Excluded in Section B.,
        Exclusions; or 2. Limited in Section C., Limitations . . ..
15
   (Id. at 169.)  As previously noted, the word 'special' does
16
   appear on the face of plaintiff's Policy Declaration form.  (Id.
17
   at 169.)
18
19      When read together, the aforementioned sections provide that

20 defendant will pay for risks of direct physical loss unless the

21 loss is within the enumerated exclusions or limitations.  The

22 plain meaning of this language is that the loss is covered unless

23 specifically excluded, which is the essence of an all-risk

24 policy.  See C. H. Leavell, 372 F2d at 784; 30 A.L.R.5th 170, §

25 3.  If this were indeed a specifically-enumerated risk policy, as

26 defendant suggests, there would be no need for a broad statement

27
   _____
28      [5](...continued)
   10.)

                                8

of coverage limited only by exceptions.  The exceptions would be the rule.  Absent ambiguity, the court must interpret this contract based on its plain meaning.  <u>Bank of the West</u>, 2 Cal.4th at 1264.

Courts that have confronted identical or nearly identical language interpreted it to describe an all-risk policy.  <u>See Ward Gen. Ins. Serv., Inc., v. Employers Fire Ins. Co.</u>, 114 Cal. App. 4th 548, 552 (2003); <u>Nat. Union Fire Ins. Co. v. Travelers Indem. Co.</u>, 210 F. Supp. 2d 479 (S.D.N.Y. 2002); <u>York Ins. Co. v. Williams Seafood of Albany, Inc.</u>, 544 S.E.2d 156, 157-58 (Ga. 2001).

Defendant argues that the relevant definition explaining coverage is provided by the term "Specified Causes of Loss," (Causes of Loss Form, Section F. - Definitions.)  This term, which appears in quotes has a recognized "special meaning" and appears only four places within the Policy, all within the Causes of Loss Form.  The first three occur within the exclusions and limitations sections of the form and the fourth in its own section on definitions.  The term is defined in Section F:

> "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

(<u>Id.</u> at 175.)

Defendant's interpretation is unpersuasive because it violates the plain meaning of the contract where no ambiguity exists.  First, the phrase "Specified Cause of Loss" is a different phrase than Covered Cause of Loss.  It is not the term

9

1   that appears in the Declarations Form, Business and Personal

2   Property Coverage Form, or elsewhere in the contract to provide

3   direction on what is covered under the policy.  The phrase

4   repeatedly used is Covered Causes of Loss, which is explained on

5   the Causes of Loss form in a section entitled Covered Causes of

6   Loss.

7        Further, the phrase "Specified Causes of Loss" does not

8   appear in the contract anywhere except the Causes of Loss Form.

9   Most importantly, this term is not used in the Coverage section

10  of the Causes of Loss form.  The drafters of the contract did not

11  need the excess language about what is a Covered Cause of Loss

12  and its exceptions if the term "specified causes of loss" was the

13  defining term.  For the court to construe this as such, it would

14  create ambiguity that does not exist.  <u>Waller</u>, 11 Cal.4th at 18-

15  19.

16       Moreover, any potential ambiguity on the face of the

17  document disappears when the Policy is review in its context.

18  Within the Causes of Loss Form, the term Covered Cause of Loss

19  and "specified cause of loss" are used in the same section and

20  reference each other.  If "specified cause of loss" defined

21  coverage, as defendant contends, the contract would not state

22  that Cause of Loss includes "specified causes of loss."[6]

23  _____

24       [6]   Causes of Loss Form, Section C, part 2(d) allows an
    excluded cause of loss listed in the wear in tear section to
25  be covered if it results in a "specified cause of loss."
    Part 2(k) states that if a collapse results in a Covered
26  Cause of Loss, the policy will pay for the damage caused by
    that Covered Cause of Loss.

27       Causes of Loss Form, Section D. Additional Coverage
    Collapse states that Covered Causes of Loss include the
28                                      (continued...)

10

1  (Kearney Dec., Ex. H at 174.)

2      As stated previously, the court finds that the Policy

3  defendant issued plaintiff is an all-risk policy and thus, the

4  court cannot find as a matter of law that plaintiff's loss is

5  excluded.  Under an all-risk policy, plaintiff only must show

6  that it suffered a fortuitous and extraneous loss on covered

7  property.  The burden then shifts to defendant to prove that

8  plaintiff's loss is specifically excluded or limited under the

9  Policy.  <u>Aydin Corp. v. First State Ins. Co.</u>, 18 Cal. 4th at

10 1188.   Plaintiff claims to have sustained a fortuitous loss

11 occurring on its property.  Defendant has stated that it will not

12 contest, for the instant motion, that plaintiff's loss occurred

13 on Covered Property.  Thus, for purposes of this motion,

14 plaintiff has met its burden, which now shifts to defendant to

15 prove the loss is excluded by the Policy.

16     **2.   Endorsement ACE "D" Does not Violate California Law**

17     Defendant has asserted in its seventh affirmative defense

18 that plaintiff's loss is excluded from coverage based under

19 Endorsement ACE "D"  ("Contamination Endorsement").[7] (Def.'s

20 ─────────────────

21 [6](...continued)
   additional direct physical loss or damage to covered
22 property if it was caused by "2.a. the 'specified cause of
   loss' or breakage of building glass." Later in that section
23 it states that the policy will pay for loss caused by such
   collapse of personal property if "the collapse was caused by
   a Cause of Loss listed in 2.a through 2f. above.

24

25 [7]    Endorsement ACE "D" states in relevant portion:

26     SEEPAGE AND/OR POLLUTION AND/OR CONTAMINATION EXCLUSION

27     Notwithstanding any provision in the Policy to which
       this Endorsement is attached, this Policy does not
28     insure against loss, damage, costs or expenses in
                                              (continued...)

                              11

Answer to Compl. at ¶ 3.)  Plaintiff has filed a motion for

partial summary judgment seeking a ruling that, as a matter of

law, the Contamination Endorsement may not be asserted to bar

coverage because it conflicts with California law.

Under California law, an insurer is liable for losses

proximately caused by a peril covered under an insurance policy,

even when an excepted loss was a remote cause of the loss.  Cal.

Ins. Code § 530.  However if the peril is specially excepted by

the insurance policy, and the loss would not have occurred but

for that excepted peril, the insurer is not liable even though

the immediate cause of the loss was a covered peril.  Cal. Ins.

Code § 532.

California courts have interpreted these code sections to

find an insurer liable whenever a covered loss was the efficient

proximate cause of the loss.  Sabella v. Wisler, 59 Cal. 2d 21,

31-32 (1963).  An efficient proximate cause is a loss which "sets

the others in motion" and is the "predominating or moving

---

[7](...continued)
    connection with any kind or description of seepage
    and/or pollution and/or contamination, direct or
    indirect, arising from any cause whatsoever.

    NEVERTHELESS, if fire is not excluded from this Policy
    and a fire arises directly or indirectly from seepage
    and/or pollution and/or contamination, any loss or
    damage insured under this Policy arising directly from
    that fire shall (subject to the terms, conditions and
    limitations of the Policy) be covered.

    However, if the insured property is the subject of
    direct physical loss or damage for which Underwriters
    have paid or agreed to pay, then this Policy (subject
    to its terms, conditions and limitations) insures
    against direct physical loss or damage to the property
    insured hereunder caused by resulting seepage and/or
    pollution and/or contamination.

1   efficient cause." <u>Howell v. State Farm Fire & Cas. Co.,</u> 218 Cal.

2   App. 3d 1446, 1452 (1990) (citing <u>Sabella</u>, 59 Cal. 2d at 31-32).

3   The courts have found that an insurer may not preclude

4   application of efficient proximate cause analysis through

5   inconsistent policy language. <u>Julian v. Hartford Underwriters</u>

6   <u>Ins. Co.</u>, 35 Cal. 4th 747, 754 (2005) (citing its reaffirmation

7   of this principle from <u>Garvey v. State Farm Fire & Cas. Co.</u>, 48

8   Cal. 3d 395, 413 (1989)). Additionally, courts have found that

9   insurance policy exclusions which violate Cal. Ins. Code § 530

10  are not enforceable. <u>Howell,</u> 218 Cal. App. 3d at 1459.

11  Further, the courts have held that the issue of efficient

12  proximate causation is a question of fact for the jury. <u>Garvey</u>,

13  48 Cal. 3d at 413 ("the ultimate coverage determination is for

14  the jury").

15       Plaintiff contends that the Policy's Contamination

16  Endorsement violates California Insurance Code section 530 by

17  attempting to exclude a Covered Causes of Loss, here vandalism,

18  which resulted in contamination. The court disagrees. The court

19  finds within the Contamination Endorsement's plain meaning an

20  interpretation which is lawful and reasonable. As such, there is

21  no need to invalidate that portion of the contract.

22       Plaintiff's argument focuses solely on the first paragraph

23  of the Contamination Endorsement:

24       Notwithstanding any provision in the Policy to which this
         Endorsement is attached, this Policy does not insure against
25       loss, damage, costs or expenses in connection with any kind
         or description of seepage and/or pollution and/or
26       contamination, direct or indirect, arising from any cause
         whatsoever.

27

28  (Kearney Dec., Exh. H at 192.)   But, when read as a whole, the

13

1  Contamination Endorsement's language does not exclude

2  contamination-related loss "arising from any cause whatsoever,"

3  regardless of whether it was a proximate cause of a Covered Loss.

4  The aforementioned language of the Contamination Endorsement is

5  followed by two paragraphs which provide exceptions to this broad

6  exclusion.

7       In the instant case, the court need only focus on the second

8  exception found in the third paragraph of the Contamination

9  Endorsement to harmonize the form with California Law.  The

10 section states:

11        However, if the insured property is the subject of *direct
          physical loss or damage* for *which Underwriters have paid* or
12        agreed to pay, *then* this Policy (subject to its terms,
          conditions and limitations) *insures against direct physical
13        loss or damage* to the property insured hereunder *caused by*
          resulting seepage and/or pollution and/or *contamination.*

14

15 (Id.) (emphasis added.)  This language complies with the

16 efficient proximate cause doctrine as articulated in Sabella and

17 Howell.  Indeed, read in context, the exception is quite broad.

18 It holds the insurer liable if there is a loss to the Covered

19 Property that occurs due to a Covered Loss which results in

20 contamination.

21      Accordingly, plaintiff's motion for partial summary judgment

22 of defendant's seventh affirmative defense is DENIED because the

23 Contamination Endorsement, when read in context of the contract

24 as a whole, is consistent with Cal. Ins. Code § 530 and does not

25 violate California law.[8]

26

27        [8]   As such, the court rejects plaintiff's alternative
   contentions that Endorsement ACE "D" is vague and contrary to
28                                              (continued...)

                                    14

3.   **Endorsement ACE "D" Does Not Bar Coverage of
       Plaintiff's Claim.**

Since plaintiff's motion for partial summary judgment is
denied, the court must determine whether, as defendant contends,
plaintiff's loss is excluded by said Contamination Endorsement as
a matter of law.  The court cannot find that as a matter of law
plaintiff's claim is excluded.

As found above, the Contamination Endorsement is an
exclusion with exceptions.  Relevant here is the exception in the
third paragraph which the court interprets in harmony with
statutory requirements that an insurer cover the efficient
proximate cause of a covered loss.  Sabella, 59 Cal. 2d at 31-32;
see also Julian, 35 Cal. 4th at 754.  Specifically, the court
interprets the language to hold the insurer liable for damage to
Covered Property caused by resulting contamination and/or
pollution if it was the efficient proximate cause of a Covered
Loss.  Here plaintiff and defendant dispute not only whether
there was a Covered Cause of Loss, but whether a Covered Cause of
Loss was the efficient proximate cause of the "contamination" in
this case. (RUF at ¶¶ 18, 25; DF at ¶ 5(plaintiff claims
vandalism was the Covered Cause of Loss and the efficient
proximate cause)); (RUF at ¶¶ 17, 24 (defendant referring to lack
of specifics on glass contamination, which is not covered by the
policy)); (DF at ¶¶ 6,8 (defendant stating claim was denied
because there was no Covered Cause of Loss, but if there was it

_____

[8](...continued)
other sections of the Policy.

15

1   was excluded by the Contamination Endorsement)).  The California

2   Supreme Court in <u>Garvey</u>, held that determining the efficient

3   proximate cause is a question of fact for the jury.  <u>Garvey</u>, 48

4   Cal. 3d at 413 ("the ultimate coverage determination is for the

5   jury").  As such, there is a genuine issue of material fact

6   regarding whether plaintiff's loss is excluded by the

7   Contamination Endorsement.  Therefore, defendant's motion for

8   summary judgement is DENIED.

9                            **CONCLUSION**

10       Accordingly, the court finds that:

11       1) Plaintiff's motion for partial summary judgment of

12  defendant's seventh affirmative defense is DENIED.

13       2) Defendant's motion for summary judgment is DENIED.

14       IT IS SO ORDERED.

15  DATED: August 11, 2005

16                          /s/ Frank C. Damrell Jr.
                            FRANK C. DAMRELL, Jr.
17                          UNITED STATES DISTRICT JUDGE